IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

GREGORY MARSHALL #183459
        Plaintiff               :

        v.                        :   CIVIL ACTION NO. CCB-09-2269

ROBERT FRIEND, et al.        :
        Defendants

## MEMORANDUM

On August 27, 2009, Gregory Marshall, presently incarcerated at the Western Correctional Institution at Cumberland (WCI), filed a civil rights action seeking a court order wherein he would be evaluated by State psychiatrists employed by the Maryland Department of Health and Mental Hygiene. He further complained about conditions at WCI and stated he is wrongfully subjected to a "behavior management plan" ("BMP") and refused pyschotropic medication. Despite the fact that Marshall is subject to the "three strikes" provision of 28 U.S.C. § 1915(g), his claims concerning lack of psychological treatment and placement on a "behavior management plan" were permitted to proceed.[1] Defendants have provided a dispositive motion addressing the level of psychological treatment provided plaintiff, as well as a court-ordered supplement discussing aspects of the "behavior management plan" imposed, whether such a plan was implemented as part of plaintiff's psychological treatment, and the impact, if any, of the plan on the state of Marshall's mental health. The dispositive motion as supplemented[2] (Paper Nos. 17 and 30) has been construed as a motion for summary judgment. Marshall's opposition responses and cross-motion for summary judgment (Paper Nos. 25 and 27) have been received

---

[1] Marshall's attempts to amend his complaint to include other allegations against prison personnel not closely related to the underlying issues raised herein (*see* Paper Nos. 6 and 9) were denied.

[2] Defendants' motion for extension of time to file the supplement (Paper No. 29) is granted nunc pro tunc to April 9, 2010.

and considered.[3] Marshall's requests for a declaratory judgment as to the unconstitutional nature of his BMP and for injunctive relief mandating transfer to another facility for mental health evaluation and treatment may be resolved without oral argument.[4]  See Local Rule 105.6 (D. Md. 2009).

## Standard of Review

Fed. R. Civ. P. 56(c) provides that:

> [Summary judgment] shall be rendered forthwith if the pleadings, the discovery and disclosure materials on file, and any affidavits, if any, show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original).

The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)).  The court should "view the evidence in the light most favorable to....the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility."

---

[3] Marshall's motion for leave to file a lengthy opposition response (Paper No. 27) is granted. Although captioned as a motion to amend, Paper No. 27 is in fact an opposition response. To the extent that Marshall intended to amend the complaint to include allegations of poor conditions of confinement, leave to amend is denied.

[4] The court is without authorization to grant Marshall's request that defendant Weber be "bar[red]…from impersonating a psychologist or psychiatrist…" Paper No. 1 at 4, item 4. Furthermore, there is no reason to stay the case in order to convene a grand jury to inquire about "perjured statements" contained in defendant Weber's affidavit. Such request, contained in Paper No. 28, shall be denied.

2

*Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

A prisoner is entitled to receive reasonable treatment for his serious medical needs. *See Estelle v. Gamble*, 429 U.S. 97 (1976). Failure to provide treatment, when indicating a "deliberate indifference to serious medical needs of prisoners" results in "the 'unnecessary and wanton infliction of pain,'...proscribed by the Eighth Amendment." *Id*. at 104. Deliberate indifference is shown by establishing that the defendant had actual knowledge or awareness of an obvious risk to a plaintiff's serious medical need and failed to take steps to abate that risk. *See generally, Farmer v. Brennan*, 511 U.S. 825 (1994); *Brice v. Virginia Beach Correctional Center*, 58 F. 3d 101 (4th Cir. 1995). An inmate also has an Eighth Amendment right to be free from deliberate indifference to serious psychiatric needs. *See Comstock v. McCray*, 273 F.3d 693, 702 (6th Cir. 2001). There is no underlying distinction between the right to medical care for physical ills and its psychological and psychiatric counterpart. *See Bowring v. Goodwin*, 551 F.2d 44, 47 (4th Cir. 1977). An inmate is entitled to such treatment if a "[p]hysician or other health care provider, exercising ordinary skill and care at the time of the observation, concludes with reasonable certainty (1) that the prisoner's symptoms evidence a serious disease or injury; (2) that such disease or injury is curable or may be substantially alleviated; and (3) that the potential for harm to the prisoner by reason of delay or the denial of care would be substantial." *Id*. The *Bowring* court further concluded that the aforementioned right to such treatment is based

upon the essential test of medical necessity and not upon that care considered merely desirable. *Id*. at 48.

As previously noted, even if a prisoner shows that he was denied psychological or psychiatric treatment, he must also demonstrate that the failure or refusal to provide treatment constituted deliberate indifference on behalf of medical personnel. Marshall seemingly alleges that the BMP designed and implemented by WCI personnel has no therapeutic value and has been improperly substituted as a cost-saving measure to deny him access to full mental health services, including medication and psychiatric consultation.

Given Marshall's allegations, the court must first determine what the BMP actually is – and what it is not. Record evidence denotes the BMP as a psychological plan developed by prison staff[5] in late September of 2007 to address Marshall's pattern of disruptive behavior.[6] Plan developers indicate that Marshall "has a history of displaying self-mutilation behavior that has been at times difficult to manage within the correctional setting."[7] Paper No. 30, Exhibit 2 at 1. Staff also noted:

> [Marshall's] past also includes a significant history of malingering behavior for secondary gain directed toward receiving special concessions and privileges from the correctional system. In addition, his pattern of behavior is an attempt to avoid responsibility for inappropriate behavior while meeting expected behavior goals.
>
> Inmate Marshall's self-mutilation and disruptive behavior is well known throughout the Maryland Division of Correction system. A review of the charts indicates that

---

[5] The names of all staff involved in BMP development are not provided. It appears that defendant Ronald S. Weber, a mental health counselor with advanced certification, played a key role in same. Paper No. 30, Exhibits 1 and 2.

[6] Although Marshall was not told of the plan, Paper No. 30, Exhibit 2 at 3, he obviously learned of its existence and in fact has a copy of it.

[7] In his affidavit, defendant Weber states that Marshall has not harmed himself during the two and a half years he has been held at WCI. Paper No. 30, Exhibit 1 at 1, para. 5. As Marshall points out in his opposition, he was hospitalized on August 27, 2009, after swallowing two razor blades, Paper No. 27, Exhibit 3, and may have swallowed part of a zipper on or near December 11, 2009. Paper No. 28, Exhibit 1. Marshall's objection to the contrary, Weber's misstatement as to the effectiveness of the BMP in preventing self-injurious behavior does not, without more, invalidate its usefulness as a behavior management tool.

4

> inmate Marshall is a 43 year old…African American male serving 30 years for second degree murder. He began self-mutilation behavior at a reported age of 13. He has a long psychiatric history of being hospitalized in state hospitals prior to incarceration, as well as multiple placements in a Correctional mental health setting while incarcerated….His adjustment history is poor with 156 pages of infractions listed….

Paper No. 30, Exhibit 2 at 1.

The plan turns on minimizing Marshall's manipulation of prison staff by limiting the number of staff who come into contact with him. The essential elements of the plan follow:

> To limit inmate Marshall's ability to split staff and manipulate the correctional system, Marshall's case will be managed by the Housing Unit Manager and the Psychology Associate assigned to the housing unit. Currently, his case is being managed by Lt. Friend and Psychology Associate Mr. Weber, M.S., LCPC, NCC. In the event that either Lt. Friend or Mr. Weber is unavailable for consultation, they may be contacted at their home, further, in the event that contact cannot be established, the contents of this BMP should be strictly followed.
>
> When interacting with inmate Marshall, his comments and behavior should be addressed in a professional, "business like", and matter-of-fact manner. Under no circumstances is his behavior to be addressed with a sympathetic comment or tone.
>
> In the event that inmate Marshall receives an infraction for a rule violation, his disciplinary segregation will not be "cut". He will be expected to complete the sanction in its entirety set forth by the hearing officer.
>
> In the event that inmate Marshall is observed participating in self-mutilation, he will be treated by medical staff in the housing unit then housed in a contingency cell. The exception to this would be if the nature of inmate Marshall's self-harm warrants an escort to the medical department for treatment; where he would then return to the housing unit in a contingency cell. In the event that inmate Marshall's behavior becomes excessively disruptive, and for safety reasons, housing in SOH [Special Observation Housing] is available.
>
> Upon placement in SOH, both Lt. Friend and Mr. Weber will manage inmate Marshall's case while consulting the administration and medical department.
>
> Inmate Marshall will not receive privileges upon his request, in response to threats of self harm, or in response to "make deals" with the promise of complying with behavior that is already expected of inmates. Inmate Marshall will earn privileges that will be granted by the imstitution (i.e. Housing Unit Lt. or Housing Unit Psychology Associate), only after displaying appropriate

> institutional behavior. This behavior may include but is not limited to the
> following: inmate Marshall must not be on disciplinary segregation, must not be
> housed in SOH, must be 30 days infraction free, and must [refrain] from self harm
> for a minimum of 30 days.

Paper No. 30, Exhibit 1 at 2.

The court concludes that the BMP is simply an attempt to gain Marshall's compliance with behavior expected of all DOC prisoners. It is not intended to replace treatment and evaluation by mental health care professionals, but rather supplements such treatment and is supervised in part by a mental health care professional. This conclusion is borne out by the record, which reveals that Marshall has had access to mental health evaluation and treatment since his 2007 transfer to WCI.[8] Based on such evaluation, staff psychiatrists Dr. Vincent Siracusano and Dr. Stephen Schellhase have concluded that Marshall is malingering rather than suffering from any true mental health condition. Paper no. 17, Exhibits 1 and 2; *see also Marshall v. Weber, et* al., Civil Action No. CCB-09-2927 (D. Md.), Paper No. 4, Exhibit 1, Declaration of Margaret Reed, and Exhibit 3 at 6. On June 17, 2009, Dr. Schellhase concluded that Marshall malingers mental illness for secondary gain, and did not at that time require psychotropic medication. *Marshall v. Weber, et al.*, Civil Action No. CCB-09-2927 (D. Md.), Paper No. 4, Exhibit 1. Defendant Weber met with, or attempted to meet with, Marshall

---

[8] The court is aware that Marshall deems the treatment rendered within the Division of Correction inappropriate; indeed, he recently has litigated such claims. In *Marshall v. Lynn, et al.,* Civil Action No. JFM-07-2711 (D. Md.) (consolidated with JFM-08-221 (D. Md.)), the court found Marshall had received adequate medical and mental health treatment despite his intentional efforts to thwart same by inflicting injury on himself. The court noted there that:

> [Plaintiff's] attempts to manipulate prison classification staff and psychologists by harming
> himself in order to merit long-term commitment to CMHC-J may in fact be a facet of his
> mental illness. Medical experts, however, have documented why such commitment is not
> necessary and have concluded that plaintiff can be housed elsewhere if compliant with
> his medication regimen. Nothing more is constitutionally required. Further, no evidence
> exists to support plaintiff's claims of retaliation and conspiracy.

*Id.*, Paper No. 29 at 9.

throughout 2009 and 2010, to assess his mental condition.[9] Indeed, as recently as August of 2009, this court was examining the level of mental health services provided to Marshall at WCI. In *Marshall v. Trenum, et al.*, JFM-09-1309 (D. Md.), the court concluded that WCI mental health experts were attempting to control Marshall's conduct using behavior modification, rather than psychotropic medications. At most, that law suit, as well as the instant action, appear to be based on Marshall's disagreement with these efforts. An Eighth Amendment violation based on deliberate indifference to his medical needs, however, has not been demonstrated. There is simply no showing that Marshall must be provided the drugs he seeks, a single cell, evaluation by "outside" or "other" psychiatric personnel, or placement in a state facility of his choosing. Declaratory judgment and injunctive relief shall be denied and this case closed by way of a separate order.

     June 15, 2010                                    /s/
Date                                              Catherine C. Blake
                                                    United States District Judge

---

[9] The nature of the discussions, however, are not provided as part of the record.